UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 5:04-CR-35 |
| | § | |
| DAMAZO ACOSTA, JR. | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

**CAME ON TO BE CONSIDERED THIS DAY** Defendant's Motion to Suppress (Docket Entry # 21). The Court, after reviewing the motion, the response, and hearing arguments of counsel, recommends the motion be **DENIED**.

**Procedural Background**

Damazo Acosta, Jr. ("Defendant") is charged with possession of marijuana with intent to deliver, in violation of Title 21, United States Code, Section 841(a)(1), said violation alleged to have occurred October 21, 2004, in Titus County, Texas. Defendant filed a motion to suppress the evidence seized in a traffic stop. The Court conducted a hearing on the motion on February 28, 2005.

**Factual Background**

On October 21, 2004, Sergeant H.L. Beasley ("Beasley"), with the Titus County, Texas Sheriff's Office, stopped a 2005 Chrysler vehicle for failing to maintain a single marked lane of traffic on three separate occasions and for traveling too closely on Interstate 30 near the 171-mile marker in Titus County. The driver of the vehicle, later identified as Defendant, presented an Arizona driver's license with a false name of Thomas John Williams and a false date of birth of December 15, 1965. Beasley asked Defendant to whom the vehicle belonged, and Defendant stated

it was a rental car. Beasley asked for the rental agreement, and Defendant produced a Thrifty Rental Agreement. Beasley then asked Defendant to exit the vehicle and accompany him to the front of his marked patrol unit. At the unit, Beasley advised Defendant of the reason for the traffic stop and that he was going to issue a warning citation for the offenses indicated.

Prior to issuing the warning citation, Beasley scanned the rental agreement and observed that the renter of the vehicle was Damazo Acosta and that no additional drivers were listed on the agreement. Beasley then asked Defendants about Acosta, and Defendant indicated that he was his brother-in-law. Beasley asked Defendant to remain at the front of the patrol unit with Deputy Sheriff John Livingston, who had arrived at the scene. Beasley walked around Chrysler vehicle and observed that there was no personal luggage in the vehicle. Defendant had advised Beasley that he was en route to Memphis, Tennessee to visit relatives, and he intended to stay until the following Monday.

Beasley returned to Defendant and asked him if there were any drugs or weapons in the vehicle. Defendant stated, "No." Beasley asked Defendant for consent to search the vehicle. Defendant denied consent. Beasley, being a canine officer, then advised Defendant that he was going to conduct an open air search around the vehicle with his canine. Defendant was patted down at this time for the officers' safety.

Beasley removed his canine, Lucky, from his patrol unity and walked him to the front of the Chrysler vehicle. The dog was placed in his search pattern and began moving down the driver's side of the vehicle. As the dog came upon the rear tire well, he began to aggressively pull on his lead, moved around to the rear of the vehicle, and alerted on the trunk of the vehicle. The dog was then returned to the patrol unit.

2

Beasley advised Defendant that he had a positive alert on the vehicle for the odor of a substance that the canine had been trained to detect and that Defendant would be detained until the search of the vehicle was complete.  Beasley instructed Livingston to place Defendant in handcuffs for the officers' safety.  Livingston complied.  Beasley advised Defendant that he was not under arrest.  While Beasley opened the trunk of the vehicle, he smelled the odor of marijuana.  Beasley opened a brown and white carry-on bag and discovered approximately 97.2 pounds, including packaging, of marijuana inside the trunk underneath some clothing.  Beasley advised Defendant that he was under arrest for possession of marijuana.  Livingston informed Defendant of his *Miranda* rights.

Later that day, Sergeant Investigator Bryan Watts ("Watts") was called to assist with the marijuana seizure and learned that Beasley and Livingston were not able to locate any information on the Arizona driver's license in the name of Williams provided by Defendant or the social security number provided to Beasley.  Watts and Livingston conducted a search of the suspect vehicle for identification purposes only.  Watts located a social security card and Army Driver Improvement Program card that belonged to Damazo Acosta.  Watts ran a warrant check on Acosta and found that he was wanted by the U.S. Marshals Service for revocation of probation (bank robbery).  Watts determined from the cards found in the vehicle that Defendant was Acosta and not Thomas John Williams.

### Defendant's Motion to Suppress

Defendant contends the initial traffic stop leading to his arrest was a pretext for a drug search. Defendant argues the evidence seized as a result of this pretextual search should be suppressed.  The Government contends the initial traffic stop was valid because Beasley observed Defendant failing

to maintain a single lane and following too closely in violation of the traffic laws of the State of Texas. According to the Government, once Beasley stopped Defendant, he was entitled to conduct an investigation reasonably related in scope to the circumstances that initially justified it. The Government asserts several circumstances during the stop entitled Beasley to detain Defendant until he had satisfied his suspicions. Finally, the Government contends the search of Defendant's vehicle was based on probable cause.

## Discussion

During the hearing, Officer Beasley testified that he initially stopped Defendant because he disobeyed the traffic laws, exited the interstate, quickly got back onto the interstate, and again disobeyed the traffic laws. The Court accepts Officer Beasley's version of the facts as true. The Court has reviewed the video tape of the incident. Defendant was stopped for failing to maintain a single lane and following too closely in violation of the traffic laws of the State of Texas. The Court observed that it was an eighteen wheeler in front of the Defendant's vehicle that Defendant was following too closely. The stop was in the middle of the night, further evidence to discredit Defendant's assertion that he was a target and that the initial stop was a pretext for a drug search. The Court concludes the stop of Defendant's car was valid.

Once Officer Beasley stopped Defendant, he became suspicious because the name on the rental agreement did not match the name on the driver's license provided by Defendant. The rental agreement did not provide for additional drivers. In addition, the rental agreement was for only two days, and Defendant mentioned he was traveling to Memphis to visit relatives. Officer Beasley also saw no luggage in the vehicle.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held

that police officers may detain individuals briefly on the street, even though there is no probable cause to arrest them, as long as they have a reasonable suspicion that criminal activity is afoot. Reasonable suspicion under *Terry* must be based on "specific and articulable facts," and the facts must "be judged against an objective standard." *Id*. at 21, 88 S.Ct. at 1880. In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court applied the principles of *Terry v. Ohio*, 392 U.S. 1 (1968) to automobile searches.

Defendant's responses and the circumstances surrounding the initial stop gave rise to suspicions unrelated to the traffic offense. Officer Beasley properly broadened his inquiry. The totality of the circumstances known to Officer Beasley met the requisite level of reasonable suspicion under *Terry* to detain Defendant until he had satisfied his suspicions.

Moreover, Officer Beasley did not have to possess reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop. In *Illinois v. Caballes*, 125 S.Ct. 834, 2005 WL 123826 (U.S. Jan. 24, 2005), an officer stopped the respondent for speeding and radioed the police dispatcher to report the stop. *Id.* at 836. A second officer overheard the transmission and headed for the scene with his narcotics-detection dog. *Id.* When he arrived, the second officer walked his dog around the respondent's car, and the dog alerted at the trunk. *Id.* Based on that alert, the officers searched the trunk, found marijuana, and arrested the respondent. *Id.* The trial judge denied the respondent's motion to suppress, holding the dog alert was sufficiently reliable to provide probable cause to conduct the search. *Id.* The appellate court affirmed, but the Illinois Supreme Court reversed, concluding that because the dog sniff was performed without any "'specific and articulable facts'" to suggest drug activity, the use of the dog "unjustifiably enlarg[ed] the scope of a routine traffic stop into a drug investigation." *Id.* at 837, *quoting* 207 Ill.2d 504, 510

(2003). The Supreme Court granted certiorari to determine whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop. *Id.* The Court held a canine sniff conducted during a lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment. *Id.* at 838.

### Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress (Docket Entry # 21) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.  A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 7th day of March, 2005.**

*Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE